## Warren Gas Light Co., Appellant, *v.* Pennsylvania Gas Co. et al.

*Gas companies—Exclusive rights—Natural Gas—Equity—Act of May 29, 1885—Special act of March 8, 1869.*

A company organized under the special act of March 8, 1869, P. L. of 1872, 1217, with the exclusive right to furnish manufactured gas for light to the citizens of Warren by the terms of its charter, has no exclusive right as against a corporation delivering natural gas to the citizens of Warren for illuminating or lighting purposes, under the act of May 29, 1885, P. L. 29.

Argued April 30, 1894. Appeal, No. 195, July T., 1893, by plaintiff, from decree of C. P. Warren Co., March T., 1893,

No. 43, in equity, dismissing bill in equity.   Before STER-
RETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.
Affirmed.

Bill in equity for injunction to restrain defendant company
from supplying, and the other defendants from using, natural
gas so supplied for illuminating purposes.

The following opinion was filed by OLMSTEAD, P. J.:

" The plaintiff company was organized under a charter granted
by a special act of assembly approved March 8, 1869.   The 2d
section of said act provides as follows : ' That the said corpora-
tion shall have exclusive authority to supply with gas light or
water the borough of Warren and its vicinity in the county of
Warren, and such persons, partnerships and corporations resid-
ing therein as may desire the same, at such prices as may be
agreed upon, and also make and erect, within or adjacent to
said borough, the necessary buildings, machinery and apparatus
for manufacturing and distributing the same, with the right to
enter upon any public street, lane or alley or highway for the
purpose of laying down pipes, altering, inspecting and repair-
ing the same, doing as little damage to said streets, lanes, al-
leys or highways, and impairing the free use thereof as little
as possible.'

" No water was furnished under this charter, and the name
of the corporation was subsequently changed to the ' Warren
Gas Light Company.'

" The company proceeded under this charter and for many
years manufactured and delivered gas for lights to the people
of Warren, erecting buildings for manufacturing, taking pos-
session of the streets for laying pipes, etc., expending in the
enterprise a considerable sum of money, stated in the plaintiff's
bill at $60,500.

" The defendant company was incorporated some years sub-
sequently, under the provisions of an act of the General As-
sembly entitled ' An act to provide for the incorporation and
regulation of natural gas companies,' approved May 29, 1885,
P. L. 29.   They obtained the consent provided for in the said
act of assembly of the borough councils, constructed a plant,
laying pipes in the streets and supplying the people of Warren
with natural gas.   For a time this natural gas was supplied or

used for heating purposes only. At this time the defendant company is furnishing natural gas for lighting or illuminating purposes, and are furnishing it to the individuals made defendants in this case for lights.

" The plaintiff contends that it has the exclusive right under its charter to furnish gas for illuminating purposes in the borough of Warren and its vicinity, and that the furnishing of natural gas for illuminating purposes by the defendant is in violation of the exclusive privileges vested in the plaintiff by the terms of its charter.

" The defendant by its answers denies no allegation to be found in the plaintiff's bill that is material for the proper determination of the question, and the case comes before the court for determination on the bill and the answer.

" It will be observed that the phraseology of the 2d section of the act granting the plaintiff its franchises, and the 34th section of the act of April 24, 1874, P. L. 93 (relative to the incorporation of gas companies), is almost precisely the same. This section of the act of 1874 has received in several cases a judicial construction, and the construction put upon the act of 1874 applies with equal force to the act under which the plaintiff claims its exclusive powers, and we think that, under the well decided cases of our court of last resort, the exclusive privileges granted the plaintiff apply only to the plaintiff's right to manufacture and sell in the borough of Warren artificial or manufactured gas. The fact that natural gas was at the time of the passage of both these acts of assembly unknown and unused as an illuminant, coupled with the provisions of both acts in reference to the erection of buildings and apparatus for manufacturing gas, shows quite clearly that the legislature did not consider that by the legislation they were granting privileges either exclusive or otherwise to manufactured gas companies as against companies organized to supply natural gas. This question seems first to have come before the Supreme Court in the case of Emerson v. Commonwealth, 108 Pa. 111. A history of that case would be unprofitable and is uncalled for here ; it is sufficient to say that in it the court held that ' The general corporation act of 1874, providing inter alia for the incorporation of gas companies, does not authorize the creation of a corporation for the purpose of supplying natural

gas to customers.  The act contemplates only the supply of a manufactured product, whether gas light or heat.'  This question came before the Supreme Court incidentally in the case of the Appeal of the Scranton Electric Light and Heating Company, 122 Pa. 154.  In the case just cited an electric light company incorporated under the act of 1874 claimed an exclusive privilege, and the court held that 'the corporation act of April 29, 1874, providing for the incorporation of companies for the manufacture and supply of gas or the supply of light or heat to the public by other means does not authorize the incorporation of companies for the supply of electric light to consumers.'  This case was decided upon the principle so frequently affirmed by the court in recent years, that a legislative grant of exclusive privilege to a corporation is to be construed most strictly and every intendment not strictly in favor of the grant claimed must be construed against it, and from the opinion of Justice GORDON I quote the following: 'Monopolies operate in restraint of competition and are detrimental to the public welfare, and are not to be allowed at all except where the resultant advantage is in favor of the public.'

" Public grants are to be so strictly construed as to operate as a surrender by them of the sovereignty no further than is expressly declared by the language employed.  The grantee takes nothing by inference and except so far as the exclusive privilege can be clearly found from the grant itself, it is not conferred, and the right of eminent domain still rests with the state and may be granted to competing and rival interests, however injurious they may be to those taken by the prior grantee.  The Charles River Bridge v. Warren Bridge, 11 Peters, 420, is a strong case upon this question.  A charter for a bridge had been granted to the plaintiff company and bridge constructed.  Subsequently a charter was granted to the Warren Bridge Company; under it the defendant company erected a bridge but a few yards distant from the bridge of the plaintiff and the second grant was sustained, although, as the judge says in his opinion, it produced a competition practically destructive of the value of the grant of the prior franchise, and this was put upon the ground resulting from the declared rule of construction of such grants, that they should be strictly construed against the grantee, and that nothing should be taken by in-

ference or presumption to enlarge their import. The court held that the state had relinquished its sovereignty only so far as the purpose to do so was clearly expressed in the prior grant; there are no violations of the legal rights of the prior grantee by the subsequent grant.

" We conclude from the case above cited that while the plaintiff company has the exclusive right to furnish manufactured gas for light to the citizens of Warren by the terms of its charter, its right was not exclusive as against a corporation delivering natural gas to the citizens of Warren for illuminating or lighting purposes.

" It is contended by the able solicitors for the plaintiff that the plaintiff's franchise gives it the exclusive right to lay pipes in the streets, and that the right to lay pipes in the streets is the franchise which the plaintiff receives from the commonwealth and that the defendant should be restrained from laying pipes in the streets. We cannot so view the case. Of course if defendant could be restrained from the use of streets for laying pipes the whole purpose of plaintiff would be accomplished thereby, for there is no known means of conveying gas except by pipes, and pipes in a town or city could only be laid in the streets. The laying of pipes for the transportation of the gas is a mere incident to the business and not the business itself. The business was the delivering and sale of natural gas for light and heat; the transportation is incidental thereto. The same is also true of water companies; they produce, store and supply to customers water. Transportation by pipes is the means of delivering and is a mere incident of the business. See opinion of Judge WILLIAMS in Carothers' Appeal, 118 Pa. 485."

The court entered a decree dismissing the bill.

*Error assigned* was above decree.

*Wm. D. Brown* and *R. B. Stone,* for appellant, cited : Phila. v. R. R., 6 Whart. 43 ; Slaughter House Cases, 16 Wal. 36 ; Cooley, Const. Lim. § 34 ; Lumber & Boom Co. v. Com., 100 Pa. 444 ; Morawetz, Corp. § 1057 ; Gibbons v. Ogden, 9 Wheat. 74 ; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650 ; Louisville Gas Co. v. Citizens Gas Co., 115 U. S. 683 ;

Water Works v. Rivers, 115 U. S. 674; City v. Kalchthaler, 114 Pa. 547; Harrow Co. v. Rosenberger, 40 Leg. Int. 382; Osborn v. Bank, 9 Wheat. 738; Com. v. R. R., 58 Pa. 26; Com. v. Bank, 3 W. & S. 184; Scranton El. L. & H. Co.'s Ap., 122 Pa. 176; Carothers' Ap., 118 Pa. 487; Lehigh Water Co.'s Ap., 102 Pa. 515; Emerson v. Com., 108 Pa. 111; Binghamton Bridge, 3 Wal. 51.

*M. F. Elliott, Hinckley & Rice* with him, for appellee, cited: Act of May 29, 1885, P. L. 29; Emerson v. Com., 108 Pa. 111; Scranton El. L. & H. Co.'s Ap., 122 Pa. 154.

PER CURIAM, May 14, 1894:

All that is necessary to be said in justification of the decree dismissing plaintiff's bill, etc., will be found in the clear and convincing opinion of the learned president of the common pleas. He has fully considered and satisfactorily disposed of all the questions necessarily involved in the case. On principle as well as authority his conclusions, as to the extent of plaintiff's exclusive charter rights, appear to be correct; and further discussion of the subject is unnecessary.

Decree affirmed on the opinion of the court below and appeal dismissed with costs to be paid by appellant.